UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

_____

UNITED STATES OF AMERICA,   )
                            )     Case No. 4:19CR3095
    Plaintiff,         )
                            )
    vs.                  )     Omaha, Nebraska
                            )     April 21, 2020
    AARON LEE FISCHER,     )
                            )
    Defendant.         )
_____)

BEFORE:  THE HONORABLE CHERYL R. ZWART, MAGISTRATE JUDGE

TRANSCRIPT OF PROCEEDINGS

CHANGE OF PLEA HEARING

APPEARANCES:
For the Plaintiff:
    U.S. Attorney's Office - Lincoln
    By:  Steven A. Russell, Esq.
    100 Centennial Mall North, Suite 487
    Lincoln, Nebraska 68508

For the Defendant:
    Federal Public Defender's Office - Lincoln
    By:  Jessica L. Milburn, Esq.
    100 Centennial Mall North
    112 Federal Building
    Lincoln, Nebraska 68508

Transcriptionist:
    Kelly Custard
    6200 Northfield Road
    West Bloomfield, Michigan 48322-2431
    (402) 960-2198

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

1    (Proceedings began at 2:27 p.m.)

2         THE COURT:  We're on the record in case number

3    4:19CR3095, the United States of America versus Aaron Fischer.

4         Counsel, please enter your appearance.

5         MR. RUSSELL:  Your Honor, please enter the appearance

6    of Steven Russell on behalf of the United States.

7         MS. MILBURN:  And Jessica Milburn, appearing with Mr.

8    Fischer.

9         THE COURT:  Mr. Fischer, you're here today because I've

10   been told that you want to enter a plea of guilty.  Is that

11   true?

12        THE DEFENDANT:  Yes, Your Honor.

13        THE COURT:  I need to explain to you that I am not your

14   sentencing judge.  I'm not the judge who's going to determine

15   whether your guilty plea is accepted and whether your plea

16   agreement is accepted.  Those matters would be taken up by Judge

17   Gerrard, who is your sentencing judge.  But what I can do for

18   you today is gather some information from you and make a

19   recommendation up to Judge Gerrard on those issues.

20        Do you agree to proceed before me?

21        THE DEFENDANT:  Yes, ma'am.

22     (The oath was administered to the Defendant.)

23        THE COURT:  You're now under oath, sir.  You've sworn

24   to tell the truth, which means if you lie during this

25   proceeding, you can be separately prosecuted for the crime of

1    perjury.

2            Do you understand that?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  Now, I want to also cover one more thing.

5    Typically, these hearings would be done in person.  That is,

6    obviously, the preferable way to do that.  Under the

7    circumstances, we're dealing with the Covid-19 pandemic, and all

8    court hearings have been delayed -- all in-person court hearings

9    have been delayed until that no longer poses a substantial risk

10   of harm to the public.

11           But the parties requested, through your counsel and the

12   Government's counsel, that this matter be taken up by video

13   conference.

14           Do you agree to doing it by video today?

15           THE DEFENDANT:  Yes, Your Honor.

16           THE COURT:  All right.  I have -- at this time, I'm

17   going to have the Government explain to you, again, the charge

18   to which you intend to plead guilty and the possible penalty for

19   that charge.

20           Mr. Russell.

21           MR. RUSSELL:  Mr. Fischer, you're charged in Count I of

22   the indictment with a violation of Title 18, United States Code,

23   Section 2251(a), which is production of child pornography.

24           If you're found guilty of that crime, the maximum

25   penalty is up to 30 years in prison, with a mandatory minimum of

1    15 years in prison; a maximum fine of up to $250,000; both such

2    maximum fine and term of imprisonment; a special assessment of

3    up to $50,000; and a term of supervised release of up to life,

4    with up to at least five years of supervised release.

5            Sir, do you understand the nature of the crime charged

6    and the maximum possible penalties?

7            THE DEFENDANT:  Yes, I do.

8            THE COURT:  Having heard the crime charged again and

9    the possible penalties, is it still your intent to plead guilty?

10           THE DEFENDANT:  Yes, Your Honor, it is.

11           THE COURT:  I have, in front of me, a petition to enter

12   a plea of guilty and a plea agreement.  Do you have those

13   documents in front of you?

14           THE DEFENDANT:  I do not, no.

15           THE COURT:  Okay.  Then I will just ask you:  Did you

16   go over these documents with your attorney on April 17th?

17           THE DEFENDANT:  I'm not sure of the date, but, yeah, we

18   went over them.  Yes.

19           THE COURT:  About a week ago?

20           THE DEFENDANT:  Yeah.  Yeah.

21           THE COURT:  Okay.  At the time you went over those

22   documents, did you have her explain all of the questions to you

23   in the petition?

24           THE DEFENDANT:  Yes.  Yes, she did explain those to me.

25   Yes.

1      THE COURT:  Did you answer those questions truthfully?

2      THE DEFENDANT:  Yes, I did.

3      THE COURT:  Did she document your answers correctly?

4      THE DEFENDANT:  Yes.

5      THE COURT:  And then, after going through it, did you

6  allow her to sign on your behalf and then, today, personally

7  sign it as well?

8      THE DEFENDANT:  Yes, I did both of those things.  Yes.

9      THE COURT:  All right.  Going to the plea agreement,

10  did she explain all of the terms of the plea agreement to you?

11      THE DEFENDANT:  Yes, she did.

12      THE COURT:  Were there any questions about the meaning

13  of the plea agreement that she was unable to answer?

14      THE DEFENDANT:  No.  She answered all my questions.

15      THE COURT:  And after going through the plea agreement,

16  did she have -- place a typed signature on it and then have you

17  personally sign it today?

18      THE DEFENDANT:  Yes.

19      THE COURT:  All right.  When you went over these

20  documents about a week ago, were you under the influence of

21  drugs or alcohol or having any difficulty thinking?

22      THE DEFENDANT:  No, ma'am.

23      THE COURT:  Are you under the influence of anything

24  right now?

25      THE DEFENDANT:  I am not, no.

1          THE COURT:  Are you having any difficulty hearing,

2   understanding, or answering my questions?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you understand that if the Court accepts

5   your plea of guilty, you will be found guilty of a felony?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Do you understand you have the right to

8   plead not guilty and make the Government try to prove this case

9   at trial?

10          THE DEFENDANT:  Yes, I do.

11          THE COURT:  Do you understand you are giving up your

12   trial rights by pleading guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  You've been represented in this case by Ms.

15   Milburn.  Is that correct?

16          THE DEFENDANT:  That is correct.

17          THE COURT:  Do you believe that she has investigated

18   this case sufficiently so that you know what to do today?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Are you satisfied with her representation?

21          THE DEFENDANT:  Yes, I am.

22          THE COURT:  Has anybody threatened you in any way to

23   get you to plead guilty?

24          THE DEFENDANT:  No.

25          THE COURT:  Has anybody promised you anything other

1    than the promise within the plea agreement to get you to plead

2    guilty?

3            THE DEFENDANT:  No, ma'am.

4            THE COURT:  Do you understand that if you chose to go

5    to trial, you would have the right to counsel representation at

6    the trial at no cost to you?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Ms. Milburn, in other words, would continue

9    to represent you and she would never send you a bill for that

10   help.

11           Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand that if you chose to go

14   to trial, you would have a jury trial?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand that, at that trial, you

17   would have the right to see and hear any witnesses who testify

18   against you and to have them cross-examined on your behalf?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Do you understand you would have the right

21   to call witnesses for you?  And if they would not come

22   voluntarily, you could get a court order called a subpoena to

23   make them come and testify?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that if you chose to go

to trial, you could testify yourself if you wanted to or you could stay silent?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Do you understand that if you stayed silent at the trial, the jury would not be allowed to consider that silence in deciding whether you are guilty?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand that if you chose to go to trial, the Government would not get a conviction against you unless it was able to prove, to every single juror, that you are guilty beyond a reasonable doubt?

THE DEFENDANT:  Yes, I understand.

THE COURT:  Are you willing to give up all of those trial rights and plead guilty in this case instead?

THE DEFENDANT:  Yes, I am.

THE COURT:  With a guilty plea, you will have a felony record, and with that felony record comes a loss of civil rights.  Those rights include the right to vote, the right to serve in a jury, the right to hold a public office, the right to carry a weapon.  You can also lose federal benefits, but you will lose rights.

Do you understand that?

THE DEFENDANT:  Yes, I do.

THE COURT:  And knowing that you will lose civil rights, are you willing to plead guilty?

1    THE DEFENDANT:  Yes, I am.

2    THE COURT:  You're looking at a statutory sentence in

3    this case of a minimum of 15 and up to 30 years in prison; a

4    possible fine of up to $250,000 could be imposed in addition to

5    any term of imprisonment; supervised release of at least five

6    years and up to a lifetime; a $100 mandatory special assessment;

7    and an assessment for restitution.

8    Do you understand that?

9    THE DEFENDANT:  Yes.

10    THE COURT:  All right.  You have what is called an

11    11(c)(1)(C) plea agreement.  Under the terms of that plea

12    agreement, as I understand it -- let me get to that page --

13    you're agreeing that your term of imprisonment should be a

14    minimum of 210 months in prison and a maximum sentence of up to

15    360 months in prison, with ten years of supervised release to

16    follow any period of incarceration.

17    Is that your understanding of what you agreed to?

18    THE DEFENDANT:  Yes.

19    THE COURT:  All right.  How this is going to work -- I

20    want to make sure you understand that what Judge Gerrard is

21    going to do is he's going to decide whether he agrees with those

22    terms, as far as the sentence.

23    What he's going to consider first is the sentencing

24    guidelines.  Have you talked about those with Ms. Milburn?

25    THE DEFENDANT:  Yes, we talked about things.

1          THE COURT:  All right.  In addition to the sentencing

2     guidelines, he's going to consider all of the relevant

3     information that he finds in this case.  That could include

4     things such as any criminal history you may have, the number of

5     images that were involved in this case, the age of the children

6     reflected in those images, those types of things.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And once Judge Gerrard considers all of

10    your relevant conduct and makes his findings, do you understand

11    that he can choose to sentence you between 210 and 360 months or

12    he could decide that that isn't the right sentencing range?

13         Do you understand?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Now, if he decides that that is not the

16    correct range for your sentence, you'll be allowed to withdraw

17    your plea of guilty and you can either negotiate another

18    agreement with the Government or go to trial.

19         Do you understand?

20         THE DEFENDANT:  Yes, I do.

21         THE COURT:  But if he chooses or says that 210 to 360

22    months, in that range, is the correct sentence and he sentences

23    you in that range, do you understand you will be required to

24    serve all of that sentence and the most you can get off with it

25    is 54 days per year for good time served and that's only if you

1  earn good time?

2        Do you understand?

3        THE DEFENDANT:  Yes, Your Honor, I do.

4        THE COURT:  Now, after you serve your time in prison,

5  you will be placed on what is called supervised release for at

6  least 10 years.  I want to make sure you understand what that

7  means.

8        When you're on supervised release, you're following

9  rules -- or required to follow rules that are set out in your

10  sentencing order.  Those rules will be placed in the sentencing

11  order at the time of sentencing.

12        Do you understand that?

13        THE DEFENDANT:  Yes, I do.

14        THE COURT:  What the supervised release would mean in

15  this case is for ten years after you get out of prison, you have

16  to follow those rules, and probation officers from the federal

17  court will be monitoring your conduct and make sure that you do.

18        Do you understand that?

19        THE DEFENDANT:  Yes, ma'am.

20        THE COURT:  Do you understand that if you violate those

21  rules, you can be brought back to court and sent back to jail?

22        THE DEFENDANT:  Yes.

23        THE COURT:  And do you understand that if you violate

24  those rules, by committing another crime, your penalty or

25  sentence on the new crime could be greater than it otherwise

1 would have been merely because you were already serving a

2 sentence in this case when you committed another crime.

3        Do you understand?

4        THE DEFENDANT:  Yes.

5        THE COURT:  You will be required to pay a $100

6 mandatory special assessment.

7        Were you aware of that?

8        THE DEFENDANT:  Yes.

9        THE COURT:  All right.  Is this the $5,000 version, Mr.

10 Russell?

11        MR. RUSSELL:  No, it's not, Your Honor.  This case

12 qualifies for a $50,000 special assessment.

13        THE COURT:  Okay.  And in addition to that,

14 restitution; is that correct?

15        MR. RUSSELL:  Yes, Your Honor.

16        THE COURT:  Okay.  So let me explain what we're talking

17 about here, sir.

18        At the time of sentencing, Judge Gerrard will listen to

19 any evidence that is offered regarding the harm that you caused

20 to other people by your criminal conduct.

21        Do you understand that?

22        THE DEFENDANT:  Yes.

23        THE COURT:  When you're -- when you cause harm to other

24 people through criminal conduct, you can be required to pay for

25 that, and that is called restitution.

1    Do you understand?

2    THE DEFENDANT:  Yes.

3    THE COURT:  So once Judge Gerrard listens to any

4    evidence that is presented on that, he can include, in your

5    sentence, an amount that you have to pay for the harm you

6    caused.

7    Do you understand?

8    THE DEFENDANT:  Yes, I do.

9    THE COURT:  In addition to that, there is such a thing

10   as a special assessment, which, in this case, is $50,000 because

11   of the gravity of the crime.  I want to make sure you understand

12   what that is.

13   It is for -- it is placed into a fund that is used to

14   pay victims of this type of crime, whether they can be

15   specifically tracked to you or not.

16   Do you understand that?

17   THE DEFENDANT:  I think so.  That -- is that something

18   that I pay?  Is that what that means?

19   THE COURT:  Yes.  It can be imposed upon you, the

20   $50,000 special assessment, as part of your sentence in this

21   case.

22   Do you understand?

23   THE DEFENDANT:  Yes.

24   THE COURT:  Now, if you cannot afford to pay it, that

25   is a criteria that you would discuss and that your attorney

1  would advocate on your behalf to Judge Gerrard at the time of

2  sentencing.

3          Do you understand?

4          THE DEFENDANT:  Yes, ma'am, I do.

5          THE COURT:  But what my job is, for you here today, is

6  to make sure you know the worst possible scenario, and it could

7  be up to $50,000.

8          Do you understand?

9          THE DEFENDANT:  Okay.  Yes, I understand.

10         THE COURT:  All right.  You have a plea agreement with

11  the Government which outlines your agreement regarding what

12  should happen at the time of sentencing.

13         Do you understand that agreement is between you and the

14  Government and it is not binding on Judge Gerrard?

15         THE DEFENDANT:  Yes.

16         THE COURT:  At this time, I'm going to have Mr. Russell

17  explain that plea agreement to you.  Please listen as he does

18  that.

19         Mr. Russell.

20         MR. RUSSELL:  Your Honor, the plea agreement in this

21  matter is that the Defendant would plead guilty to Count I of

22  the indictment.  In exchange, the United States would move to

23  dismiss Counts II, III, and IV at the time of sentencing.

24         The elements of the offense, a factual basis, and the

25  penalties are set forth in the plea agreement, in addition to

1    the fact that the agreement is limited to the United States

2    Attorney's Office for the District of Nebraska and cannot bind

3    any other federal, state, or local prosecuting administrative or

4    regulatory authority.

5           As the Court's already advised the Defendant, it is an

6    11 -- this is an 11(c)(1)(C) plea agreement, calling for a term

7    of imprisonment, to be ordered by the court, of at least 210

8    months and a maximum of 360 months, somewhere in that range.

9           The parties agree that the Defendant would also receive

10    a ten-year term of supervised release after any period of

11    incarceration, but the exact terms of imprisonment, including

12    restitution and other terms of supervised release, are left to

13    the discretion of the court.

14           As the Court has already indicated, the Defendant would

15    be required to make restitution, if shown and ordered by the

16    district court.

17           There is a waiver of appeal and collateral attack

18    provision in the plea agreement, which limits the Defendant's

19    ability in those two areas.

20           The Defendant further agrees to waive his right to

21    withdraw his plea of guilty, pursuant to Rule 11(d) of the

22    Federal Rules of Criminal Procedure, and that says the Defendant

23    can only withdraw his plea of guilty in the event the court

24    rejects the plea agreement, as we've already discussed.

25           Your Honor, I believe those are the main terms of the

1 plea agreement.

2 THE COURT: Ms. Milburn, do you agree?

3 MS. MILBURN: I do agree.

4 THE COURT: Okay. Mr. Fischer, did you listen as the

5 Government described the plea agreement?

6 THE DEFENDANT: Yes, Your Honor, I did.

7 THE COURT: Did Mr. Russell's description match your

8 understanding of your agreement with the Government?

9 THE DEFENDANT: Yes.

10 THE COURT: All right. There's a couple of things I

11 need to make sure you understand. You have what is called a

12 waiver of appeal and a waiver of collateral attack.

13 Everything that's done by this court is subject to

14 being looked at by another court to make sure it was done right.

15 The process is called an appeal, and the court that looks at it

16 is the Eighth Circuit Court of Appeals.

17 Do you understand?

18 THE DEFENDANT: Yes.

19 THE COURT: Do you understand that under the terms of

20 this plea agreement, you're giving up your right to that appeal

21 process unless you are claiming that Ms. Milburn provided you

22 with ineffective assistance of counsel?

23 THE DEFENDANT: Yes.

24 THE COURT: Collateral attack is different than an

25 appeal. With a collateral attack, you can challenge your

1  conviction and your sentence by claiming your constitutional

2  rights were violated.

3          Do you understand?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Do you understand that under the terms of

6  this plea agreement, you're giving up your right to that type of

7  proceeding as well unless you are claiming that Ms. Milburn

8  provided you with ineffective assistance or you are claiming

9  that what you're admitting to here today is not a crime.

10         Do you understand that?

11         THE DEFENDANT:  Yes, I understand.

12         THE COURT:  Do you understand that your waiver of

13  appeal and your waiver of collateral attack apply both to your

14  conviction and to the sentence you've not yet received?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Have you talked to Ms. Milburn about your

17  appeal rights and your collateral attack rights?

18         THE DEFENDANT:  Yes, we did talk about that.

19         THE COURT:  After having those discussions and

20  considering your options, have you decided to give up your right

21  to appeal and to collateral attack with the exceptions listed in

22  the plea agreement?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Has anybody made any promises to you that

25  are not in this plea agreement?

1    THE DEFENDANT:  No.

2    THE COURT:  Do you understand that whether you plead

3  guilty or whether you're found guilty at trial you could get the

4  same sentence?

5    THE DEFENDANT:  Yes.

6    THE COURT:  In other words, do you understand there is

7  no guarantee your sentence will be less because you plead guilty

8  instead of being found guilty by a jury?

9    THE DEFENDANT:  Yes.

10    THE COURT:  At this time, I'm going to have the

11  Government explain the factual basis -- the key points of the

12  factual basis.  I will point out that the plea agreement does

13  have some facts within it.

14    Just one moment.

15    All right.  I'm sorry about that.

16    All right.

17    All right.  At this time, then, I will have the

18  Government explain the key facts the Government will present at

19  trial if this case went to trial.

20    Please listen as Mr. Russell does that.

21    Mr. Russell.

22    MR. RUSSELL:  Your Honor, as the Court has already

23  indicated, the factual basis is set forth in the plea agreement.

24    The main facts are, between May 1st and May 4th, the

25  Defendant communicated with a 13-year-old minor, who's been

1   identified as Victim 1.  During the course of those

2   communications, which were on various Internet media --

3   Internet-based social media platforms, the Defendant and the --

4   Victim 1 began to engage in sexual communication, sexual -- I

5   guess, sexual topics that led to a meeting between the Defendant

6   and Victim 1 on May 4th, 2019, for the purpose of engaging in

7   sexual conduct that occurred.

8        The Defendant and Victim 1 met at a school in Lincoln,

9   Nebraska.  Victim 1 and the Defendant then went to a residence

10   in Lincoln, Nebraska, where the Defendant and Victim 1 engaged

11   in sexually explicit conduct, as defined by federal law.  The

12   Defendant filmed Victim 1 performing the sexually explicit

13   conduct using an Apple iPhone SE, which is a cellular phone

14   manufactured, mailed, transported, and shipped outside of the

15   state of Nebraska, in coming from -- coming in through foreign

16   commerce.  And then, later, the Defendant distributed the video

17   of the sexual act to Victim 1 on May 5th, of 2019.

18        That's what the evidence would show, Your Honor.

19        THE COURT:  Ms. Milburn, do you agree?

20        MS. MILBURN:  I do agree, Your Honor.

21        THE COURT:  All right.  Mr. Fischer, did you listen as

22   the Government described the evidence against you?

23        THE DEFENDANT:  Yes, ma'am.

24        THE COURT:  Is everything that Mr. Russell said the

25   truth?

1          THE DEFENDANT:  Yes.

2          THE COURT:  On May 4th, of 2019, were you here in

3     Nebraska?

4          THE DEFENDANT:  Yes.

5          THE COURT:  While in Nebraska, did you have contact

6     with a person of the age of 13?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Did you entice that person in any way to

9     engage in sexually explicit conduct?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Did you do so for the purpose of taking

12    photographs and pictures and visual depictions of this person of

13    the age of 13 engaging in sexual explicit conduct?

14         THE DEFENDANT:  Yes.

15         THE COURT:  All right.  Did you know, at the time that

16    you did that, that those visual depictions would be transported

17    across state lines?

18         THE DEFENDANT:  Did I know that they would be

19    transported?

20         THE COURT:  Did you have reason to know?

21         THE DEFENDANT:  No.  I'm not sure I understand the

22    question, but --

23         THE COURT:  All right.  Mr. Russell --

24         MR. RUSSELL:  Your Honor --

25         THE COURT:  -- can you help me out a bit?

          MR. RUSSELL:  Yeah.  The -- there's two things related
to the -- to the indictment.  One is that he used materials in
producing the child pornography, which had been manufactured,
mailed, transported, or shipped across state lines or in foreign
commerce.

          Mr. Fischer used an iPhone SE in order to film the
minor engaging in sexually explicit conduct.  The Apple iPhone
SE was manufactured, mailed, and transported through interstate
and foreign commerce.  Then, at a later time, he -- he texted
the video to Victim 1.

          But I think, where he is -- where Mr. Fischer may be
getting hung up is, in essence, the -- the video relates -- or
the video was produced using materials that had been
manufactured outside of the state of Nebraska.

          THE COURT:  Okay.  All right.

          Sir, do you understand what Mr. Russell just said?

          THE DEFENDANT:  Yes, I understand.

          THE COURT:  Did you use an Apple SE iPhone to create
the visual depictions of the child?

          THE DEFENDANT:  Yes.

          THE COURT:  Engaging in sexual explicit conduct?

          THE DEFENDANT:  Yes.

          THE COURT:  Do you agree that the Apple SE cell phone
was not manufactured in the state of Nebraska and had to come
across state lines to get into your hands?

1      THE DEFENDANT:  Yes.

2      THE COURT:  And did you also use that same iPhone,

3  then, to text those pictures to the 13-year-old victim?

4      THE DEFENDANT:  Yes.

5      THE COURT:  All right.  Any additional questions, Mr.

6  Russell?

7      MR. RUSSELL:  No, Your Honor.  Thank you.

8      THE COURT:  Ms. Milburn?

9      MS. MILBURN:  No, Your Honor.  Thank you.

10     THE COURT:  Mr. Russell, do you believe the guilty plea

11 is knowing, intelligent, and voluntary and that there is a

12 factual basis for it?

13     MR. RUSSELL:  I do, Your Honor.

14     THE COURT:  Ms. Milburn, do you agree?

15     MS. MILBURN:  I agree, Your Honor.

16     THE COURT:  All right.  Mr. Fischer, do you want this

17 court to accept your plea of guilty?

18     THE DEFENDANT:  Yes, Your Honor, I do.

19     THE COURT:  Do you have any questions of me before I

20 proceed?

21     THE DEFENDANT:  No, I don't.  No.

22     THE COURT:  All right.  To Count I of the indictment,

23 which alleges that, on or about May 4th, of 2019, while in the

24 District of Nebraska, you did persuade, induce, and entice and

25 coerce a minor to engage in sexually explicit for the purpose of

producing visual depictions of that conduct, knowing that the

materials would -- that you were using to do that were

transported into the state of Nebraska through interstate

commerce and, thereafter, texting those photos using that same

phone, what do you plead?

THE DEFENDANT:  I plead guilty.

THE COURT:  I do find that your guilty plea is knowing,

intelligent, and voluntary and that there is a factual basis for

it.  I will recommend to Judge Gerrard that he accept your plea

of guilty and your plea agreement.  He'll take up both the

issues of your guilty plea and plea agreement at the time of

sentencing.

We're looking at a sentencing date of July 17th at

9:30.  Does that work for everyone?

MR. RUSSELL:  It does for the Government, Your Honor.

MS. MILBURN:  Let me double check, Your Honor.

THE COURT:  Uh-huh, no problem.

MS. MILBURN:  That will be fine, Judge.  Thank you.

THE COURT:  All right.  Anything else that we need to

take up on this case?

MR. RUSSELL:  No, Your Honor.

MS. MILBURN:  No, Your Honor.  Thank you.

THE COURT:  We are in recess.

THE DEFENDANT:  Thank you.

(Proceeding concluded at 2:54 p.m.)

1    C E R T I F I C A T E

2         I, KELLY CUSTARD, court-approved transcriber, certify

3    that the foregoing is a correct transcript from the official

4    electronic sound recording of the proceedings in the

5    above-entitled matter.

6

7
     S/Kelly Custard_____          5/17/20
8    Kelly Custard                        Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25